DETROIT LUBRICATOR MANUF'G CO. *v.* RENCHARD and others.

(*Circuit Court, E. D. Michigan.* August 15, 1881.)

1. LETTERS PATENT—IMPROVED LUBRICATORS—ANTICIPATION.

A mere drawing, not followed by construction and actual use of the machine, does not amount to anticipation. *Held, therefore,* that the letters patent granted May 22, 1877, to Charles H. Parshall, for an improvement in lubricators, is not anticipated by the drawing of J. V. Rerchard, which bears date August 10, 1876.

2. SAME—SAME.

A lubricator, with metal oil cup, glass indicator, and a tube shaped like an inverted syphon, whereby the condensed water can drop into the oil cup through the indicator, not admitting of the passage of the oil into the condenser, but forcing it into the engine it is needed to lubricate, which is effected by an arrangement of the parts by which the condenser and the oil cup are brought into immediate contact, so that the water-seal tube may conduct the condensed water into the body of the oil, and thence upward again so as to discharge directly into the indicator, while it may not effect any new result, does attain the same result in a better mode than was known before. and is therefore a valid subject for a patent.

In Equity.

MATTHEWS, Justice. This was a bill in equity, filed May 4, 1881, by the complainants, as assignees of Charles H. Parshall, of a patent granted to him May 22, 1877, for an improvement in lubricators, alleging an infringement by the defendants and praying for an injunction and an account. The defendants, by their answer, deny the alleged infringement, and claim the right to manufacture, use, and sell lubricators, such as it is shown in the proof they are engaged in making, by virtue of a patent to the defendants, J. Vincent Renchard and John J. Renchard, No. 184,426, granted November 14, 1876, and insist that they, and not Parshall, are the true, first, and original inventors of the device now claimed by the complainant; and that the said Parshall surreptitiously and unjustly obtained the letters patent issued to him. It is also averred, by way of defence, that the improvements claimed in the Parshall patent, No. 191,171, are shown and described in certain earlier patents, viz.: No. 169,124, granted to W. P. Stevenson, October 26, 1875, and No. 187,964, granted to W. A. Clark, March 6, 1877. It is also alleged, as a defence, that the Parshall patent is void because the production of the device therein shown did not involve the exercise of invention or discovery, but only mechanical skill.

The inventions claimed as covered by the Parshall patent relate to certain improvements in lubricators for steam-engines, according to which they are of a construction peculiarly fitted to be readily and neatly applied to any form of engine, and also compacting the several parts into a close and simple body form. The supporting stem is provided with independent steam and oil ducts directly connecting the main steam-pipe of an engine with the respective water-condensing and oil-feeding chamber of the lubricator. A water-pipe connects the condenser with a glass indicating tube, located on the side of the lubricator opposite to that of the supporting stem, and is of such a construction as to both warm the oil in the body of the cup and at the same time act as an effective seal, guarding against the inflow of oil into the condenser. The indicator has free connection at both top and bottom extremities with the interior of the oil cup, while the upper extremity connection is free, and opens jointly into the oil cup and the water-pipe leading from the condenser, thus permitting the water and oil to pass respectively between the indicator and the water-pipe on the one hand, and the indicator and the oil cup on the other hand. The oil cup is made of metal, and is provided with a check-valve, through which drop by drop the oil is forced into and through the duct leading into the steam-pipe, as drop by

drop it is displaced by water from the condensing chamber passing through the water-pipe in a siphon-shaped tube, and dropping from its lower orifice into the glass indicator, which thus at all times shows the continuous operation of the lubricator, until the supply of oil in the oil chamber is exhausted. The steam from the steam-pipe passes by a separate duct into the condensing chamber, and is prevented by the check-valve in the oil duct from passing through it into the oil cup. The controversy in the present suit arises upon the sixth claim of the patent, which is in these words:

"(6) The combination with the oil chamber and condensing chambers, directly secured to each other, of a water seal pipe, the upper end of which connects with the condensing chamber, while the lower portion of the pipe depends into the oil chamber, and the lower end connects directly with a glass indicator, the ends of which have free communication with the oil chamber, substantially as and for the purpose set forth."

As there is free communication between the oil cup and the glass indicator, the oil and the water stand related as to level in the latter precisely as they do from time to time in the former, and the drops of water, as condensed, fall into the oil cup, displacing the oil, only through the glass indicator. It will be observed that the combination set forth in this claim contemplates the oil and condensing chambers as "directly secured to each other." The two chambers are in juxtaposition, the condensing chamber being immediately over the oil cup, the bottom of the former being in a single piece with the body of the condenser, and forming the top of the oil cup, being a diaphragm, the supporting stem which connects the lubricator with the steam-pipe being fitted above this diaphragm to the condenser and not intervening between the two chambers. This feature in the arrangement of the parts of the device is material, considering the state of the art at the date of the patent, and limits the claim of the patent in the sixth claim to its precise terms.

Prior to the issue of the Parshall patent, viz., November 14, 1876, there was granted to two of the defendants, John J. Renchard and J. Vincent Renchard, a patent, No. 184,426, for an improved lubricator, under which the defendants claim the right to manufacture the lubricators alleged by the complainant to be an infringement of the Parshall patent. In that patent, however, the condensing chamber and the oil cup are not directly secured to each other. The apparatus is attached to the steam-pipe of an engine by means of a horizontal trunk. On top of this a condensing chamber is secured, and from the outer end of the lower part the oil cup is suspended. Communi-

cation between the two is had by an angular passage, into an enlarged continuation of which is tapped the upper and longer leg of an inverted siphon tube, whose short leg terminates near the top of the cup and close to the sides thereof usually observed. The cup itself is a glass cylinder, and has no external indicator. One of the claims of the patent (the third) is: "In a displacement lubricator, substantially as described, the combination, with the elevated water reservoir and suspended oil cup, of the inverted siphon tube, through which the water passes into the said oil cup, substantially as described and shown." There is no separate claim in this patent for the inverted siphon tube. The advantage of having the tube in the form of an inverted siphon is thus set forth in the specifications of this Renchard patent: "If the tube were straight, the water in its descent would press up the oil, which is of less specific gravity, and the water and the oil would thus gradually change places; but by making it in the shape of an inverted siphon, and being always full of water, the oil cannot force its way down through the short leg, and hence takes another outlet." In other words, it effectually prevents the escape of oil by ascent through the tube into the condensing chamber, and forces it through the duct prepared for it into the steam-pipe or machine to be lubricated.

As early as January 2, 1872, a patent for an improvement in lubricators, No. 122,361, was granted to William A. Clark, Westville, Connecticut, which consisted of a metallic condensing chamber, superimposed upon a glass oil cup, connected by means of a straight tube, depending perpendicularly, to convey the water into the oil cup to a point very near its bottom, below the water level. Between the two chambers was the arm or trunk, by which the lubricator was attached to the steam-pipe, and by means of a single passage through which steam was admitted to the condenser, and the oil, forced upward from the oil cup, flowed into the steam-pipe. Subsequently, March 6, 1877, but still prior to the date of the Parshall or complainant's patent, there was issued to Clark an additional patent, No. 187,964, for an improvement in lubricators. In this he substituted for the glass oil cup one made of metal, with a glass indicator, external to it, but freely communicating with it at both extremities. The water tube, which in his previous instrument passes vertically and directly from the condenser to oil cup, was now made to pass by a right angle horizontally through the intervening trunk towards the gauged tube or indicator, where it terminated by opening upwards into a small chamber, in which was sealed a light check-valve. From this cham-

ber a passage extending downward into a glass indicator delivered the drops of condensed water against the side of the glass indicator, constituting a visible feed. The use of the metallic oil cup instead of one made of glass became necessary, particularly upon locomotives, as experience had shown that glass is liable to be broken by the motion of the machinery; but that rendered equally necessary the use of the glass indicator, so that it might be open to observation what was the condition of the lubricator. This undoubtedly led to the improvement patented by Clark, March 6, 1877, and to that of Parshall, May 22, 1877. Comparing their patents with one another, remembering that they are each for a particular and specifically described combination of several parts, no one of which is separately claimed as new, I cannot say that they are identical, or that either of the prior ones covers that claim in controversy in this suit, as set forth in that of the complainant.

It is further insisted by the defendants, however, that if not covered by the patent of November 14, 1876, nevertheless the combination now claimed by the complainant was their own invention, and prior to that of Parshall, and that, in truth, Parshall acquired the knowledge of it from them surreptitiously, and so obtained his patent in fraud of their rights. The evidence, in my opinion, does not sustain the charge that Parshall obtained his knowledge of the device he claims to have patented from the defendants, and the assumption that both were original and independent inventors of it seems to me best supported by the proof. The defendants exhibit a drawing made by J. V. Renchard which bears date August 10, 1876, and which, it is testified by him, was made on that day, and by others, that he showed it to them about that time. This antedates Parshall's application, but it fails to supersede his patent for the reason that it seems well-established in evidence that Renchard did not at that time prosecute the matter beyond the mere drawing. The drawing seems to exhibit a perfect machine in all its parts, and sufficiently to show the combination forming the subject of the present controversy, particularly the metallic oil cup, the siphon tube carrying the condensed water into the glass indicator, and the two chambers, condensing and oil, closely and directly united. Nevertheless, it is clearly proven that the defendants did not, in fact, construct an indicator in this form, and reduce it to actual use, until after it had been successfully accomplished by Parshall, nor until after the date of his patent. This mere drawing, therefore, cannot be allowed to have the effect of depriving Parshall of his title of being the first and original inventor.

It is insisted, however, on the part of the defendant, that the Parshall patent is void, so far as the sixth claim now under consideration is involved, on the ground that the combination covered thereby is a combination of parts already well known, producing no new result, and requiring no invention, but only mechanical skill, in its adaptation, and therefore not patentable; and to support this proposition counsel cite and urge the rule as laid down in the supreme court in the case of *Heber* v. *Van Normer*, 20 Wall. 368, in the words:

"It must be conceded that a new combination, if it produces new and useful results, is patentable, although all the constituents of the combination were well known and in common use before the combination was made; but the result must be a product of the combination, and not a mere aggregate of several results, each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Thereby bringing old devices into juxtaposition and there allowing each to work out its own effect without the production of something novel, is not invention. No one, by bringing together several old devices without producing a new and useful result, the joint product of the elements of the combination and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations; or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others, in the combination."

It is not always easy, in one's own mind, to draw distinctly the line which, in the application of a general rule like this, no matter how clearly its meaning may be apprehended, separates what is here called the exercise of that invention entitled to the protection of a patent, and exercise of mere mechanical skill in readaptations, which are not. Still more difficult is it, in the application of the rule to the circumstances of a particular case, to point out and state distinctly to others, so as to clearly convey one's meaning, the reasons which determine the conclusion reached, without, at least, reference to drawings and diagrams, and minute and detailed rehearsals, of the various parts of the machine or device, their relation to each other, their mode of operation, and comparison with others, which would show the exact state of the art at a particular date. That difficulty is encountered to some extent in the present instance; so far, at least, as the attempt should be made to enumerate any new results attained by the combination and covered by the sixth claim of the Parshall patent, other than those which are separate but aggregated results of the several well-known parts or elements that constitute the combination. But what is presented by the combination, as it seems to me, is this: A lubricator, in which the breakage

of glass oil cups is avoided by the substitution of metal, while the important feature of the visible feed is retained, by means of a glass indicator and the dropping of the condensed water into the oil cup through the indicator, by the means of a tube shaped like an inverted syphon, whereby the passage of the oil into the condenser is made impracticable, thus forcing it into the engine it is needed to lubricate. And this is effected by an arrangement of the parts by which the condenser and the oil cup are brought into immediate contact, so that the water seal tube may conduct the condensed water into the body of the oil, and thence upwards again, so as to discharge directly into the indicator. If there be no new result here, at least I am constrained to say that I feel bound to accept the decision of the experts of the patent-office, as certified in their recommending the Parshall combination for a patent, and of the office itself in granting it, as evidence, not otherwise overthrown, that the result is attained in a better mode than was before known. This evidence is corroborated by the actions of the defendants themselves, who, abandoning their lubricator, made before that in accordance with the specifications of their own patent, after the issue of the patent to Parshall, adopted in lieu of it the combination secured by it to him.

I find, accordingly, that the complainant is entitled to a decree as prayed for. Decreed accordingly.