WRIGHT CO. v. HERRING-CURTISS CO. et al.

(Circuit Court, W. D. New York. January 3, 1910.)

No. 400.

**1. PATENTS (§§ 297, 312\*)—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.**

The fact that a patent is unadjudicated will not deprive the patentee of the right to a preliminary injunction to enjoin infringement save where the prior art shows sufficient ground to doubt its validity; and on such an application evidence of public acquiescence is admissible and entitled to weight in support of the presumption of the validity of the patent and the practical utility of the device.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 481, 546; Dec. Dig. §§ 297, 312.\*

Grounds for denial of preliminary injunctions in patent infringement suits, see note to Johnson v. Foos Mfg. Co., 72 C. C. A. 123.]

**2. PATENTS (§ 61\*)—ANTICIPATION—ABANDONED APPLICATION FOR PATENT.**

An abandoned application for a patent cannot without evidence of prior invention be given weight as an anticipation of a later patent nor as a prior publication, but can only be regarded as an unsuccessful experiment.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 77; Dec. Dig. § 61.\*]

**3. PATENTS (§ 328\*)—INFRINGEMENT—FLYING MACHINE.**

The Wright patent, No. 821,393, for a flying machine, the essential feature of which is a combination of elements coacting to maintain or restore the equilibrium or lateral balance of a flying machine of the heavier than air type, was not anticipated, and discloses invention of a pioneer character, and has been so recognized and acquiesced in generally by the public, by governments, and by aeronautical societies, and is entitled to a broad and liberal construction. Also *held* infringed on a motion for a preliminary injunction.

In Equity. Suit by the Wright Company against the Herring-Curtiss Company and Glenn H. Curtiss. On motion for preliminary injunction. Motion granted.

H. A. Toulmin and Edmund Wetmore, for complainant.
Emerson R. Newell and Clifford E. Dunn, for defendants.

HAZEL, District Judge. A preliminary injunction is sought herein against the defendants, the Herring-Curtiss Company and Glenn H. Curtiss, for infringement of United States letters patent No. 821,393, granted May 22, 1906, on application filed March 23, 1903, for improvements in a flying machine to Orville Wright and Wilbur Wright, of Dayton, Ohio, and subsequently assigned to the complainant corporation. The title to the patent is not in controversy. The bill of complaint alleges that the patentees were the first inventors of what is commonly known as a heavier than air flying machine. Such machines are sustained in their aerial movements by either one or two planes or surfaces which travel through the air in a forward ascending or descending course at an angle of incidence, and may be driven or propelled by mechanical power or force of gravity. The objects of

the inventors were to provide means for maintaining or restoring the equilibrium or lateral balance of the apparatus, to remove or repress aerial forces which tended to divert the course of the apparatus, and to provide means for guiding the machine both vertically and horizontally. The claims relied upon are the seventh, fourteenth, and fifteenth. It is sufficient to here set forth the seventh claim, which in broad terms includes both the monoplane and biplane types of apparatus.

"(7) In a flying machine, the combination with an aeroplane, and means for simultaneously moving the lateral portions thereof into different angular relations to the normal plane of the body of the aeroplane and to each other, so as to present to the atmosphere different angles of incidence of a vertical rudder, and means whereby said rudder is caused to present to the wind that side thereof nearest the side of the aeroplane having the smaller angle of incidence and offering the least resistance to the atmosphere, substantially as described."

The essential elements of such claims are an aeroplane or supporting surface, the lateral portions of which are capable of adjustment to attain different angles of incidence and a vertical rudder in the rear of the machine. Claims 14 and 15 include as elements a horizontal rudder which is positioned forward of the machine and means for raising and lowering it so as to present its upper or under side to the pressure of the wind. The questions of the scope of said claims, infringement, and the propriety of granting an injunction herein are contested by the defendants.

In a flying machine of the biplane type, with which we are here concerned, the aeroplanes are connected together by upright stanchions extending lengthwise on the extreme front and rear portions thereof, and are fastened on top and bottom of the planes by universal joints so as to permit the planes or surfaces to yield to pressure and incline upward or downward at their lateral edges or marginal extremities when the cord or rope fastened to the cradle is manipulated by the aviator. This lateral yielding, warping, or distorting of the aeroplane is the essential feature by which the equilibrium is secured. Its importance cannot be overestimated, as it is shown that long before the Wright invention a method was sought by which equilibrium in mechanical flying could be secured and maintained. Not only the conception of the idea of securing and maintaining equilibrium in the air, but the appliances—the dynamic cause to achieve the result—originated in the minds of the patentees, and took shape and form in the evidently simple method of slightly turning up and down the lateral ends or margins of the planes, thus securing different angles of incidence. The unsurmountable obstacle with which prior inventors in this art struggled for years was the precipitate unbalancing or upsetting of the apparatus and such prior flying machines were therefore incapable of flights with any appreciable degree of success. The affidavits indicate that the patentees did not use the means or identities of prior flying machines, but solved the problem of maintaining equilibrium or lateral and front and rear balance by the introduction of new and practical elements and became pioneers in the field of flying machines of the so-called heavier than air type. True, some of the ele-

ments of the claims were old and are shown in the prior gliding machines, but such machines without the combination which included a method of maintaining equilibrium or lateral balance were utter failures. Hence the prior patents and publications apparently do not anticipate the Wright patent, and the claims in controversy are entitled to a broad and liberal construction.

The Wright patent is unadjudicated, but such fact will not deprive the complainant of its right to enjoin infringement save where the prior art shows sufficient ground to doubt the validity of the patent. Palmer v. Wilcox Mfg. Co. (C. C.) 141 Fed. 378. But in the present case public acquiescence is claimed. It appears that machines embodying the invention in suit have made notably successful flights in France, Germany, and the United States. The first aerial flight to which the attention of the public was attracted was had at Kitty Hawk, N. C., in December, 1903, when the Wright machine using a 12 horse power motor weighing 200 pounds demonstrated its ability to maintain its balance and readily turn to the right or left and ascend or descend. The newspapers of the country heralded as marvelous the success of the patentees, and published wide that human flight had been made possible and that the patentees were the first in the annals of the world to achieve success with a heavier than air flying machine. Public recognition of their success was subsequently made by scientific institutes and academies of high repute in this country and abroad. Medals were presented to the inventors by Congress, by the republic of France and by various areonautical societies of Europe and America. Such testimonials are entitled to weight in support of the presumption of validity and the practical utility. National Co. v. New York Co. (C. C.) 46 Fed. 114; Thompson Co. v. Two Rivers (C. C.) 63 Fed. 120. Moreover, in this connection it may be instanced as bearing upon the novelty and utility of complainant's machine that the defendant Curtiss and the affiant Herring, both officers of the defendant corporation, obtained detailed information prior to the construction of the defendant's machine, as to experiments and pressure of wind on curved and flat planes and mode of maintaining equilibrium in flights, the former through correspondence passing between the patentees and the late Lieut. Selfridge in January, 1908, and the latter from personal observation and investigation while at the camp of the patentees at Kitty Hawk, N. C., where the earlier Wright experimental flights were conducted, and subsequently both Curtiss and Herring practically admitted that in complainant's machine the problem of equilibrium appeared to have been solved. But in the answering affidavit Herring asserts that he had considered that the Wright invention was limited to the lateral warping of the planes, and not that it covered broadly the feature of lateral balancing. This brings me to the question of whether defendants' machine infringes that of complainant.

Defendants claim generally that the difference in construction of their apparatus causes the equilibrium or lateral balance to be maintained and its aerial movement secured upon an entirely different principle from that of complainant; that defendants' aeroplanes are curved, firmly attached to the stanchions and hence are incapable of twisting or turning in any direction; that the supplementary planes or so-called

rudders are secured to the forward stanchion at the extreme lateral ends of the planes and are adjusted midway between the upper and lower planes with their margins extending beyond the edges; that in moving the supplementary planes equal and uniform angles of incidence are presented as distinguished from fluctuating angles of incidence. Such claimed functional effects, however, are strongly contradicted by the expert witness for complainant. Upon this contention it is sufficient to say that the affidavits for the complainant so clearly define the principle of operation of the flying machines in question that I am reasonably satisfied that there is a variableness of the angle of incidence in the machine of defendants which is produced when a supplementary plane on one side is tilted or raised and the other simultaneously tipped or lowered. I am also satisfied that the rear rudder is turned by the operator to the side having the least angle of incidence and that such turning is done at the time the supplementary planes are raised or depressed to prevent tilting or upsetting the machine. On the papers presented I incline to the view, as already indicated, that the claims of the patent in suit should be broadly construed; and when given such construction the elements of the Wright machine are found in defendants' machine performing the same functional result. There are dissimilarities in defendants' structure—changes of form and strengthening of parts—which may be improvements, but such dissimilarities seem to me to have no bearing upon the means adopted to preserve the equilibrium, which means are the equivalent of the claims in suit and attain an identical result.

Defendants further contend that the curved or arched surfaces of the Wright aeroplanes in commercial use are departures from the patent, which describes "substantially flat surfaces," and that such a construction would be wholly impracticable. The drawing (figure 3), however, attached to the specification shows a curved line inward of the aeroplane with straight lateral edges, and considering such drawing with the terminology of the specification, the slight arching of the surfaces is not thought a material departure; at any rate the patent in issue does not belong to the class of patents which requires narrowing to the details of construction.

The Mattullath application for patent: This was an abandoned application for a flying machine filed in the patent office on January 8, 1900, and though it was declared by the inventor in the specification that he believed he had discovered a method of maintaining equilibrium in a flying machine, such application cannot be given weight on this application in the absence of satisfactory testimony of prior invention or discovery. As the record stands it can only be regarded as an unsuccessful experiment. The Corn Planter Patent, 90 U. S. 181, 23 L. Ed. 161. There are a number of adjudications called to my attention holding that an abandoned or rejected application is not a prior publication. It is not claimed that the patentees knew of its existence or had any information regarding the claimed discovery of Mattullath.

It appears that the defendant Curtiss had notice of the success of the Wright machine and that a patent had been issued in 1906. Indeed no one interfered with the rights of the patentees by constructing machines similar to theirs until in July, 1908, when Curtiss exhibited

a flying machine which he called "the Junebug." He was immediately notified by the patentees that such machine with its movable surfaces at the tips or wings infringed the patent in suit, and he replied that he did not intend to publicly exhibit the machine for profit, but merely was engaged in exhibiting it for scientific purposes as a member of the Aerial Experiment Association. To this the patentee did not object. Subsequently, however, the machine with supplementary planes placed midway between the upper and lower aeroplanes was publicly exhibited by the defendant corporation and used by Curtiss in aerial flights for prizes and emoluments. It further appears that the defendants now threaten to continue such use for gain and profit and to engage in the manufacture and sale of such infringing machine, thereby becoming an active rival of complainant in the business of constructing flying machines embodying the claims in suit; but such use of the infringing machine it is the duty of this court on the papers presented to enjoin.

The requirements in patent causes for the issuance of an injunction pendente lite—the validity of the patent, general acquiescence by the public, and infringement by the defendants—are so reasonably clear that I believe it not improbable that complainant may succeed at final hearing, and therefore, the status quo should be preserved and a preliminary injunction granted.

So ordered.