### WRIGHT CO. v. PAULHAN.

#### (Circuit Court, S. D. New York. February 17, 1910.)

**1. PATENTS (§ 177*)—CONSTRUCTION—FLYING MACHINE.**

The Wright patent, No. 821,393, for a flying machine, covers a combination of elements, one purpose of which is to maintain or restore the equilibrium or lateral balance of such a machine of the heavier than air type. The machine consists of an aeroplane having two lateral wings or planes capable of being moved into different angular relations to the normal plane of the body of the aeroplane and to each other so as to present to the atmosphere different angles of incidence, in combination with a vertical rudder, and the entire combination is intended to be effective as a means whereby the rudder is caused to present to the wind that side thereof nearest the side of the aeroplane having the smaller angle of incidence to the atmosphere, thus correcting the tendency of such difference of angle to throw the machine out of lateral balance. The specification and drawings show the tiller rope of the vertical rudder attached to the warping rope which runs along the rear of the lower plane of the biplanes in such wise that when the marginal parts of the two planes are warped into different angles of incidence, the rudder is turned automatically towards the margin having the lesser angle. *Held*, that such attachment is but one of the means by which the combination may be made effective for its purpose, and that tiller ropes under the independent control of the operator are equally such a means and an obvious modification within the scope of the patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 253, 254; Dec. Dig. § 177.*]

**2. PATENTS (§ 235*)—INFRINGEMENT—FLYING MACHINE.**

The fact that the vertical rudder of such combination when detached from the warping rope is capable of being used as a steering device, and

---

that it is so. used in a machine not made under the patent, does not avoid infringement where it is also capable of being used and is used as a part of the patented combination for the purpose of maintaining equilibrium.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 371; Dec. Dig. § 235.*]

**3.** PATENTS (§ 54*)—ANTICIPATION—ABANDONED APPLICATION FOR PATENT.

An abandoned application for a patent is not an anticipation of a later patent in the absence of some showing that the later patentee borrowed ideas therefrom.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 73; Dec. Dig. § 54.*]

**4.** PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—FLYING MACHINE.

The Wright patent, No. 821,393, for a flying machine was not anticipated, discloses a true combination of elements and patentable invention, and is a pioneer patent entitled to a liberal construction. Also *held* infringed on an application for a preliminary injunction.

In Equity. Suit by the Wright Company against Louis Paulhan. On motion for preliminary injunction. Motion granted.

Mr. Toulmin and P. W. Williamson, for complainant.

Clarence J. Shearn, for defendant.

HAND, District Judge. There is very little that I should wish to add to Judge Hazel's opinion in the case of Wright Co. v. Herring-Curtiss Co., 177 Fed. 257, were it not for the ardor of the defendant's counsel and their insistence that a different showing has been made here. In view of the seriousness of the contest, I feel obliged to give my own reasons for this decision.

The defendant says that he does not infringe the patent because he does not use a device which automatically always presents to the wind that side of the rudder nearer the angle of lesser incidence; and that if the patent be construed as merely a combination of a vertical rudder with a·device for creating a differential in the angle of incidence of the rear marginal edges of the plane, it is not a novel discovery, but was anticipated in the art. Therefore, the first consideration must be the proper construction of the contested claims of the patent in suit.

Claim 7 is the main reliance of the complainants, and that is as follows:

"(7). In a flying-machine, the combination, with an aeroplane, and means for simultaneously moving the lateral portions thereof into different angular relations to the normal plane of the body of the aeroplane and to each other, so as to present to the atmosphere different angles of incidence, of a vertical rudder, and means whereby said rudder is caused to present to the wind that side thereof nearest the side of the aeroplane having the smaller angle of incidence and offering the least resistance to the atmosphere, substantially as described."

The specifications and diagrams upon which this claim was allowed after a pendency of three years in the Patent Office, showed the tiller ropes of the vertical rudder attached to the rope which ran along the rear of the lower plane, in such wise that, when the marginal parts of the two planes were warped as indicated, the rudder was turned towards the margin which had the lesser angle of incidence.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Moreover, there was a constant proportion between the degree of deflection of the rudder and that of warping of the plane. The Bleriot and Farman planes, which the defendant uses, do not have the combination described, and the complainants have in fact at times abandoned it. It is therefore a very sound contention that if the connection between the tiller ropes and the warping device in a constant proportion, be an essential element in the combination patented, the planes which the defendant uses are in no sense infringements, and the case need not go into the question of the validity of the complainant's patent at all.

To an intelligent understanding of the invention and the question of how essential is the attachment of the tiller ropes to the warping rope, the method of maintaining equilibrium under the patented combination must first be set forth. Assume an aeroplane with or without dihedral sustaining surfaces, to be propelled through the air, having the combination specified, and also suppose the left wing has been accidentally depressed. That in itself will result, as all agree, in starting a revolution towards the left. This is the resultant of two motions: First, the forward motion of the plane; and, second, the motion at right angles caused by the sliding of the machine laterally in its own plane and over the successive columns of air. The resultant is precisely analogous to any planetary motion. This resultant is accentuated by the movement of the center of pressure towards the depressed lateral margin, giving a greater leverage to the propeller nearer the elevated wing. Also, the vertical rudder becomes transverse in its reaction to the lateral motion of the aeroplane, and consequently the rudder is pushed up, and by its leverage further turns the direction of the plane to the left. Thus the machine will begin to revolve to the left. Moreover, this very motion will cause the right wing to be further elevated, because of the increased drift, or head-resistance caused by its increasing speed, and the decreased drift against the left wing, caused by its diminished speed. Thus, in turn, the initial depression creates a revolution, and that, in turn, an increased depression with its corresponding acceleration of revolution, so on co-operating till the machine will swoop downwards to the left to its entire destruction.

The first part of the patented combination for correcting the depression of the left wing is to increase the angle of incidence upon the left side, so increasing that component of the drift which is opposite to the action of gravity. However, contrary to the assumptions of earlier speculators, this alone has a precisely contrary effect to what might be expected, because although the lifting component of the drift is increased, the head-resistance is much increased, and this decreases the velocity of the left wing in greater proportion than the increase in the angle of incidence tends to raise it. That revolution, already initiated by the very tilt itself, is therefore increased by the differential in the angle of incidence between the two margins. The right wing, which has thus an added velocity relatively to the left wing, will, in spite of its lesser angle of incidence, rise more rapidly than the left wing. Unless the revolution be corrected the increased

angle of incidence will therefore remain ineffectual to restore the balance, but will rather further disturb it, and it is therefore necessary that the rudder should be put over towards the right wing, thus counteracting the revolution. When this is done, the increased angle of incidence on the left wing becomes effectual and the left wing rises, so restoring the equilibrium of the plane. It is the combination of a differential in the angle of incidence with a rudder which operates against the side of lesser angle which produces this result.

Now, to come back to the connection of the tiller ropes to the warping mechanism. This is, of course, one "means whereby said rudder is caused to present to the wind that side thereof nearest the side of the aeroplane having the smaller angle of incidence, and offering the least resistance to the atmosphere." Literally considered, tiller ropes under the independent control of the operator are equally such a means. But the invention is not of a machine, it is not an invention of this means of so turning the rudder, but it is an invention of a combination of which this action of the rudder is a part. The statute authorizes such an invention, and if the combination be not a mere aggregation of old elements, as I shall try to show hereafter, then the precise means is of no consequence. In the patent in suit any skilled operator, who may serve pro hac vice for a "skilled mechanic," finding the automatic connection unsatisfactory, would at once disconnect it and attach the tiller ropes to a lever or to a foot pedal which he could directly control. As the examiner said in his letter of July 14, 1903, it is merely a matter of taste to attach the tiller ropes to the warping rope. The machine would be changed, but the combination would remain, because there would remain the means of causing the rudder to operate upon the side of lesser incidence. The defendant urges very vehemently that the means must be the means specified. All that the specifications need contain is so clear a description that any skilled mechanic may use the invention. Where the change is only an obvious modification of the means specified, and a modification which retains each element of the combination contributing the same effect as before, the claim is not too broad which includes the modification. Of course, were the invention an advance over a prior art which had progressed already to the combination without any automatic movement of the rudder, then the claim must have been limited to the precise specifications. This would be because only when so limited would the patent be an invention at all and the construction would be necessary ut res valeat quam pereat. The defendant insists that this is the case with the patent in suit, and I shall consider that contention later. Assuming for the present, however, that the patent need not be so limited to be saved, then it becomes a pioneer, and as such under the well-known rules is entitled to a broad construction. Therefore, viewed first as a combination, not a machine, and second, as a pioneer patent which advances by more than just the degree of an automatic connection, I cannot agree that it was not a fair equivalent to operate the tiller ropes independently by a mechanism under the direct control of the aviator. That connection was not essential to the three rudder system of control.

The question next arises whether the fact, which I must assume from the affidavits, that the rudder under some circumstances of aviation is turned towards that side of the drift nearer the angle of greater incidence relieves the defendant of infringement. In this connection, the distinction must be carefully observed between turning the rudder towards that side of the main longitudinal axis which is nearer the angle of lesser incidence, and presenting to the wind that side of it which is nearer that angle; the latter being the essential specified. While the two might be readily identified, a moment's consideration discloses that they will be quite different whenever the plane is itself turning in either direction. For example, if the plane is turning to the left in a circle whose radius is "r," and has itself a total length of longitudinal axis, a, then the rudder, if free, would stream at an angle to the inside of the axis whose tangent is $\frac{a}{r}$; that is tan. $\frac{-1a}{r}$. That is to say, the sharper the turn, and the further the rudder is set aft of the plane, the more will the rudder in turning stream inward, and apparently the operator will be putting the rudder towards the angle of greater incidence, although, in fact, the rudder may be sustaining a wind pressure from the opposite side. However, I should have no right upon this motion to interpret the defendant's affidavit as limited to the phenomenon I have described, and I shall therefore assume that the rudder under his operation at times presents to the wind that side nearer the greater angle of incidence. To determine whether this indicates that the defendant does not infringe, we should look at the purposes of the invention. These are stated to be (page 1, lines 16–24):

"The objects of our invention are to provide means for maintaining or restoring the equilibrium or lateral balance of the apparatus, to provide means for guiding the machine both vertically and horizontally, and to provide a structure combining lightness, strength, convenience of construction, and certain other advantages which will hereinafter appear."

The question is not whether the defendant upon occasion may not find it proper or even essential to turn the rudder towards the greater incidence, but whether he uses the patented combination. For example, if the patent were for an automatic device, it would be no answer to say that the defendant used it only intermittently. This combination is in fact for a great part of the time used by the defendant "to maintain or restore equilibrium." If at times he avails, himself of other methods, that is nothing to the purpose, and I may disregard it.

As a method of restoring equilibrium the defendant has not shown that the rudder can be turned towards the greater angle. All he has shown is that in making a sharp turn he puts his rudder to the opposite side. During such a turn he may doubtless for a short time abandon his equilibrium, restoring it when his direction has been changed, at which time if it remains disturbed, he must restore by the use of the patented combination. In short, his evidence goes no further than to show that he may execute certain maneuvers during which he can safely for a very short period abandon the maintenance

of his equilibrium. That in no sense affects the question that to maintain or restore it he must eventually resort to the method specified.

Much discussion has arisen as to whether the defendant's rudder is not in fact a "steering device." I concede that it is when free from the warping device, at once an essential part of the combination and also a "steering device," and that the complainants in some of their machines at times use it strictly as such. It is also true that when connected to the warping ropes it could not successfully be used as a "steering device," as Toulmin says in his letter of July 11, 1904. The question is whether the combination specified is not actually used, even though the tiller ropes are detached and the rudder thus made susceptible of being used to steer as well as to maintain the equilibrium of the plane. I think it is. It is none the less the fact, when the ropes are detached that the rudder when being used to maintain or restore the equilibrium must be used in the combination as specified and precisely as specified. It does not seem to me of consequence to say that by the detachment of the ropes, it may acquire an added function and that, too, of a kind not patentable. As an illustration of my idea, suppose that there were two rudders, one with the tiller ropes fixed to the warping mechanism, and one free so as to be used simply for steering. In such a case no one could say that the addition of the second rudder would affect the combination. The infringement has simply dropped the automatically connected rudder and made the free one serve in both capacities. Is that not the adoption of an equivalent? The rudder yet remains a part of the combination with its means of being put over to the lesser angle. It has acquired by a simple suggestion to the mind of the operator an added use and a more varied power of adaptation in the combination. I should feel most unwilling in a patent of this character to construe it so narrowly as to exclude the modification from the purview of the patent. Nor yet is it of consequence that there may be other ways of maintaining equilibrium as by using the rudder alone. Any one is of course free to use such other methods.

I think there is nothing in the further objection that the Farman machine has two ailerons or flaps instead of a general helicoidal warp through the whole plane. The use of such ailerons is an obvious equivalent, and the only possible question arises from the fact that the aileron cannot be given any negative angle. However, the essential of the combination is a differential in the marginal angle, and that is as well accomplished though the lesser angle can never be less than zero, as though it could. Considering, therefore, that the complainants carefully avoided limiting themselves "to the particular description of rudder set forth," I think that the detachment of the ropes from the warping devices leaves the patent substantially the same as specified.

Having now determined that the defendant infringes, it becomes necessary to determine whether the showing upon the prior art is such as to throw any reasonable doubt as to the validity of the patent. Moreover, in this consideration is involved the question of whether this is a pioneer patent, because if the three rudder system of control

be an invention of the complainants, then they are clearly entitled to have their patent take place as a pioneer. Before, however, considering the prior art, it is necessary to determine, first, whether the patent is of a true combination or of an aggregation; and, second, whether it be merely a principle or abstract function, rather than a true invention. As to the first, there can be no doubt whatever. The three elements are combined into an effect which is absolutely different from that which any one of them produces alone. The differential of angle instead of maintaining equilibrium would upset it. The rudder bearing upon one side only would not be sufficient. I am aware that the defendant contends that he can fly by steering alone, but I do not understand that he claims that in practice this can safely be continued permanently in machines of this type. In combination their result is not the aggregate of their separate results; it is the result of their mutual and antagonistic reactions. Even under the strict rule of Pickering v. McCullough, 104 U. S. 318, 26 L. Ed. 749, here is fulfilled the requirement that the "old elements, all the constituents must so enter into it as that each qualifies every other; to draw an illustration from another branch of the law, they must be joint tenants of the domain of invention, seised each of every part, per my et per tout." The question as to whether the combination is not merely of a function, is likewise plain. The combination is a definite adjustment of the material parts of a machine to secure a specified result. It is not the effort to patent a certain way of operating an aeroplane as the defendant insists, because the patent demands for its fulfillment certain physical parts in combination, able to work in the way prescribed. The most plausible form of the defendant's argument is, I believe, as follows:

"Given a plane with marginal flaps or a helicoidal warp and a movable rudder, the rest is a mere way of operating the machine. The marginal warp is not patentable, nor is the vertical rudder, hence the patent must be upon the operation of the two in conjunction, and that is not a proper subject of patent under the statute."

The answer is that if the combination of elements were not new the patent would be merely upon the method of operation, but the combination is, as I have said, quite new, and the method of operating it need not be relied upon as the invention. No one before did in fact combine all these, and therefore no one gave to aviators the possibility of so operating.

Finally, therefore, the novelty of the patent arises, and this is the especial ground of the defendant's attack. I must say that I cannot agree that here there has been any acquiescence. The number of persons who can fly at all is so limited that it is not surprising that infringers have not arisen in great numbers: but, considering the possibilities it seems to me that the complainants have had an extraordinary number of contests. It is quite apparent that instead of acquiescence, they are to meet and have met with a very determined general opposition. Hence, they must show that the prior art throws no reasonable doubt upon the novelty of their invention. The defendant relies upon a number of patents and prior discoveries which I feel obliged to take up in order.

It must be observed at the outset that several of the citations are from Mr. Chanute's book, published in 1894, from which excerpts have been inserted into the moving papers. The descriptions there given are in the cases where it is relied on too inadequate to constitute valid anticipations under Barbed Wire Patent, 143 U. S. 275, 284, 12 Sup. Ct. 443, 450, 36 L. Ed. 154. It may be that upon the final hearing the defendant may be able to show these with greater detail, but when he does not show them fully enough to enable me to see that there is some reasonable ground to suppose that they were in fact anticipations, the presumption arising from the patent must prevail. It is not enough that they may have contained some undisclosed elements which might show them to be anticipations. In putting the burden of showing the prior art upon the defendant, even upon preliminary injunction, I am only following the well-settled rule in this circuit.

D'Esterno: The need of caution in regard to evidence of the kind considered in the barbed wire patent, supra, is well exemplified in the case of the description of this machine, as well as in that of Le Bris. It is impossible to say that this had in any sense the combination patented. Apparently the wings were to be fixed at a given dihedral angle and the rear parts were merely flexible. It would be most dangerous upon the meager and unsatisfactory evidence presented of what the actual machine was, to consider that it raised a reasonable doubt of an anticipation. Moreover, there is no proof that it was ever used or became more than a paper description, in which case, as I shall afterwards show, it cannot be regarded as an anticipation.

Le Bris: This is a description of the same kind which is too inadequate to understand or to give effect to. So far as one can gather, the wings could be set as a whole at different angles of incidence to the wind. Here, too, there was apparently a flexible rear portion of the wings.

No one could possibly design either of these machines from the descriptions given, and it would be most extraordinary to suppose that they in any sense contained the combination of elements, worked out after much experiment by the complainants, except by a mere chance which in no sense gave them the necessary vital correlation upon which the patent depends. Moreover, it does not appear that in the case of either of these devices they were known or used in this country except as Chanute described them, and Chanute's description as a printed publication is clearly insufficient to enable any one to construct them. Thus from no point of view are they good anticipations.

Mouillard: There is a patent in this citation which is a part of the papers and which I have examined. In no one of the 19 claims is there anything which in any way even foreshadows the patent in suit. Indeed, the machine, which was a glider, had no tail whatever, and to depress the marginal edge of one wing would have only resulted in entirely disturbing the equilibrium which he might have attempted to restore. The depressing of one wing was meant only to turn the aeroplane.

Mattullath: This was an abandoned patent containing full specifications which described six lateral and supplementary planes, three on a side, which were adjustable to different angles and were to be used to promote stability. At the rear was "a rudder secured on a vertical shaft." It does not appear whether this rudder was fixed or not and the application does not include any use of the rudder to counteract the effect of the differential in the angle of incidence of the supplementary planes. The defendant's brief says that this rudder was to enable the machine "to wheel to right or left." I can find nothing of the sort in the specifications, but for the purposes of the argument I shall assume that the vertical rudder was in fact adjustable.

As an abandoned patent, it was clearly not an anticipation. Westinghouse Air Brake Co. v. Gt. North. Ry., 88 Fed. 263, 31 C. C. A. 525. Dr. Zahm swears however, that Mattullath showed his designs to many persons. It is not enough to show such designs, for until the patent be embodied in some practical form, it is not an anticipation. Ellinthorp v. Robertson, 4 Blatch. 307, Fed. Cas. No. 4,408; Detroit Lub. Mfg. Co. v. Renchard (C. C.) 9 Fed. 293. At most, Mattullath's designs were purely experimental, and did not give the public that benefit to which it was entitled, if the patent in suit is to be held to be anticipated and without consideration. Coffin v. Ogden, 18 Wall. 120, 21 L. Ed. 821; Allis v. Buckstaff (C. C.) 13 Fed. 879. In the absence of some showing, which is not suggested, that the complainants borrowed any ideas from Mattullath, his discoveries must be held to be no anticipation.

Zahm: Dr. Zahm in a paper in 1894 suggested the use of slats in the wings so as to create a differential in the angle of incidence, but it was clearly only an ingenious suggestion and did not in the faintest degree show any comprehension of the complicated reactions and necessary correctives which would alone make the suggestion feasible. It was at most only a speculative suggestion never reduced to practical form, and fails as an anticipation, under the authorities mentioned under Mattullath.

Ader: The most serious attack upon the novelty of the patent in suit is raised over the machine of Charles Ader, a distinguished French engineer, a description of which is contained in Révue de L'Aéronautique for 1893. This being a foreign printed publication would under the statute be a valid anticipation if it foreshadowed adequately the patented invention.

Whatever may have been the merits of the machine described and actually made by Ader, it is quite clear that the patented combination was not included or understood by him. A reading of his first chapter, pages 72, 73, is enough to show that he did not regard a rudder as essential. It is not correct to say, as the complainants do, that the vertical rudder was fixed in place. The rear wheel could be moved around a vertical axis and was to be so moved to direct the machine upon the ground:

"Une quatrieme a l'arrière pour diriger l'aéroplane sur l'aire. Quand l'aéroplane a un gouvernail vertical celui ci est solidaire de la roue d'arrière et manœuvre avec elle."

The cut shows such a "gouvernail vertical," and we must assume that it was meant to be used and to be turned when the wheel turned. However, it is also equally clear that the rudder was no part of the machine. M. Ader, with the characteristic clearness of a French mind, enumerates on page 71 the four necessary primary parts of the machine: "Corps," "ailes," "force motrice," "propulseur," and these he takes up in four separate chapters. The first and shortest chapter concerns the 'corps de l'aéroplane," and enumerates seven constituent parts of which the "gouvernail vertical" is not one. The only mention of it is in the sentence I have quoted in full. The whole matter may therefore be disposed of by the single consideration of whether the permissive suggestion of a rudder is to be taken as anticipating the patented combination. In so treating the defendant's contention I shall assume that the machine was not an unsuccessful experiment and that there was an adequate and detailed description of its construction, which showed that the lateral ends of the wings could be warped to different angles of incidence at the will of the operator.

The actual invention of the complainants depends, first, upon the discovery of the necessary interrelation per my et per tout, as Mr. Justice Mathews puts it in the citation quoted above, between the several parts which go to make it up. The mere coincidence of those parts by chance or as matter of taste was in no sense an anticipation of their functional correlation, in understanding which the complainants' discovery consists and with it their invention. When, appreciating this necessary co-operation of all the elements, they specified their new combination, stating the essential necessity of their union and mutual reactions as the very essence of what they claimed, they invented something new. Ader fortuitously suggested the possibility, as matter of preference, of the third element, the rudder, and so shows conclusively that he did not in the least apprehend the mutually dependent relations between wings and rudder. Thus, the patented combination is not in the least merely a new function of one possible form of Ader's apparatus, which experience might teach an aviator. If the invention be a combination at all, and not an aggregation, it is such solely by virtue of the apprehension of that vital relation of the parts, which Ader conclusively shows he did not have. Nothing than his description could more clearly show that with him the three were in merely nonfunctional aggregation; nothing can be more clear that in the patent they are understood as in inevitable combination. These are the only anticipations cited upon the defendant's brief, so that I may assume that he relies in fact upon only these, and not upon the others cited upon the argument. However, a few words will dismiss all the others in case I misunderstand his position.

Bechtel; Crepar; Johnson; Stanley; Marriott; these are all for lateral planes to dirigible balloons. The whole problem is so entirely different when suspension is effected by a reservoir containing a lighter gas than air, that there is not the least resemblance between the patents and the patent in suit. Assume the lateral balance of such a machine to be disturbed by a depression of the left side. It does not appear that an increase in the angle of incidence upon that side

would not be adequate to restore it. The resistance so created might have some effect to turn the ship in that direction, but the inertia of the body and the friction would be presumably so great that the equilibrium would be restored without any use of the rudder. Besides, the equilibrium is insured by the fact that in such machines the center of gravity is much below the center of buoyancy, as in the case of a ship in water, and the planes were designed in all cases simply to cause the ship to rise or fall.

Boswell: This is a device to be attached to a dirigible airship, consisting of a plane adjustable in all directions used in connection with a vertical rudder. It is not apparent to me how the tilting of the plane in any of the positions in which it offered no plane of incidence to the drift would cause the ship to turn in one direction or the other, nor, how, if it did, it could even then turn it, but, whatever might be its action, it was specified simply as a steering device, and it is so wholly unlike the patent in suit both in structure and operation that I can see no similarity between them.

Davidson: This is an English patent, and is not in the least like the patent in suit.

Lampson: I cannot see any relevancy in this patent.

The importance of the issues involved in this cause must be the excuse for so extended a consideration. It is of course unusual to grant a preliminary injunction before any adjudication and without any acquiescence. However, when the right is not seriously attacked, and when the infringement is clear, the court should not hesitate to interfere. From the showing made I cannot doubt that the complainants first put into any practical form the system of three-rudder control. That there may be other systems is not to the point; let the defendant use those, if he will. Nor is it necessary to conclude that the complainants were the "first to fly." Upon that I decide nothing whatever, for it is not an issue in the case. All I do say is that I cannot find that any one prior to their patent had flown with the patented system, and that the changes from the specifications which the defendant has made are no more than equivalents which do not relieve him from infringement.

It is quite clear that for the complainant's protection a writ must go pendente lite, because the defendant being a nonresident, who is here only transiently, there is no way in which they may insure themselves of the monopoly they have acquired except by preventing his use of it at once. I regret that they have so repeatedly seen fit to accentuate the fact that the defendant is an alien. It cannot be necessary to assert that to the determination of the rights of all persons who come before the court, that fact is totally unimportant; and, indeed, it is by no means calculated to predispose me in his favor that a citizen should believe it a consideration of importance.

The showing before Judge Hazel was substantially the same as that made here, and, as I said at the outset, I should have been disposed to say nothing upon the case except to refer to his opinion, had I not thought it fair to give to the defendant the reasons for reaching an independent conclusion in accord with his.